# CIRCUIT COURT REPORTS

## NEW SERIES—VOLUME XVIII.

### CASES ARGUED AND DETERMINED IN THE CIRCUIT COURTS OF OHIO.

---

**PROSECUTION FOR ABETTING AND PROCURING PERJURY.**

Circuit Court of Cuyahoga County.

ULYSSES G. WALKER v. STATE OF OHIO.

Decided, May 21, 1910.

*Criminal Law—Sufficiency of Indictment for Aiding, Abetting and Procuring Perjury—Particular Form of Words Not Necessary in Taking Oath—Exaggeration in Argument to Jury.*

1. In an indictment for aiding, abetting and procuring another to commit perjury, the fact that the accused knew that the person whom he aided knew that he was committing perjury is sufficiently alleged by charging that the accused willfully and corruptly aided, abetted and procured the other in making, verifying and falsely swearing to a bank report, "then and there well knowing said report to be false and untrue, and thereby to commit willful and corrupt perjury in the manner and form as aforesaid."

2. One may be found guilty of aiding and abetting the commission of perjury, though the evidence does not show that he was personally present when the perjury was committed.

3. No particular form of words is necessary to the taking of an oath if both the officer who administers it and the person taking it, understand that an oath is being administered.

4. Picturesque and exaggerated language used by counsel for the state in addressing the jury in a criminal case does not necessarily require a reversal of a conviction.

*Norton T. Horr* and *Jay P. Dawley,* for plaintiff in error.
*John A. Cline* and *Walter D. Meals,* contra.

MARVIN, J.; WINCH, J., and HENRY, J., concur.

The plaintiff in error was tried and convicted in the court of common pleas of the crime of perjury. The claim on the part of the state being that he aided, abetted and procured one William G. Duncan to knowingly swear falsely in a certain affidavit which was made as to the truth of a certain report, made to the superintendent of banking of the state of Ohio, the said Walker being the president and the said Duncan the treasurer of a banking company known as "the South Cleveland Banking Company." The statute defining perjury and providing for its punishment is Section 6897, Revised Statutes, and reads:

"Whoever either verbally or in writing, on oath lawfully administered, willfully and corruptly states a falsehood as to a material matter in a proceeding before a court, tribunal or officer created by law, or matter in relation to which an oath is authorized by law, is guilty of perjury and shall be imprisoned in the penitentiary not less than three years nor more than ten years."

There is no statute making a separate crime of subornation of perjury, but Section 6804 of the Revised Statutes reads:

"Whoever aids, abets or procures another to commit any offense may be prosecuted and punished as if he were the principal offender."

So that if any offense is charged here against Walker it is a charge of perjury, and results from his suborning Duncan to knowingly swear falsely.

The sufficiency of the indictment was challenged both by motion to quash and by demurrer, both of which were overruled and the validity of the indictment sustained.

It is here claimed that the court erred in sustaining the indictment, the claim being that in order to make the indictment good, as against one who procures another to commit perjury, it must appear from the indictment that the thing sworn to must have been false; that it must have been known to the party

making the oath that it was false; that it must have been known to the party procuring the swearing to be done that it was false and it must be known to the party procuring the swearing to be done that the party making the oath knew that it was false. It is said that the indictment here, though it does charge that what was sworn to by Duncan was false and that Duncan knew it to be false, that Walker knew it to be false, yet it does not charge that Walker knew that Duncan knew that it was false, the argument being that unless Walker knew that what he was inducing Duncan to do would be perjury on Duncan's part, then there would be no guilt on the part of Walker because Walker did not know that he was inducing Duncan to commit perjury, because there would be no perjury on the part of Duncan if he believed that what he swore to was true, and so if Walker supposed that Duncan supposed that what he said was true, then Walker, though he so induced Duncan to swear to something that was not true did not know that he was inducing Duncan to commit perjury, because he did not know that Duncan did not know it was not true, and our attention is called to the case of *Jehial W. Stewart v. State of Ohio,* 22 Ohio St., 477. The first proposition in the syllabus of that case reads:

"An essential element in the crime of subornation of perjury is the knowledge or belief on the part of the accused, not only that the witness will swear to what is untrue, but also that he will do so corruptly and knowingly."

The second proposition reads:

"An indictment for subornation of perjury, setting forth in due form of law the crime of willful and corrupt perjury by the suborned witness, and then averring that the defendant feloniously, willfully and corruptly did persuade, procure and suborn the witness to commit 'said perjury in manner and form aforesaid,' sufficiently charges the defendant with knowledge that the witness would corruptly and knowingly swear to that which was false."

In the opinion by Chief Justice Welch, it is said, speaking of the indictment in that case:

"It first charges in due form of law, the crime of willful and corrupt perjury by Saxton, including the averment that Saxton knew his testimony to be false and fictitious, and concluding with the averment that Saxton had 'in manner aforesaid' committed willful and corrupt perjury; and it then charges that Stewart 'procured, persuaded and suborned the witness to commit said willful and corrupt perjury in manner and form aforesaid.' The natural and primary import of this language is, to charge upon Stewart a knowledge of the guilt and corruption of the witness. The essence of perjury is the knowledge of the witness that what he states is false. To persuade him to commit perjury is to persuade him to stifle his conscience, and to state under oath what he knows not to be true.. To persuade him to do less, that is, to make the false statement without the guilty knowledge, is not to persuade him to commit the crime."

It would appear from this that the proposition is sound, that it must appear from the indictment that the accused knew that if the other party did that which he was persuaded to do by the accused, such other party would thereby commit perjury. But it is said that this indictment charges that the accused "procured, persuaded and suborned the witness to commit said willful and corrupt perjury in the manner and form aforesaid." Tested by that rule it seems to us that this criticism of the indictment is not well taken. The indictment in the present case sufficiently charges Duncan with knowledge so as to constitute his swearing as perjury on his part. It distinctly charges knowledge on the part of Walker that what Duncan was to swear to was false, and then follows these words:

"And the said Ulyssess G. Walker then and there and at all times aforesaid, and on the day and year aforesaid, prior thereto, and at the county aforesaid, did feloniously, willfully, corruptly and unlawfully aid, abet and procure him, the said William G. Duncan in making, verifying and falsely swearing to said report, and the matters and things therein stated as aforesaid, then and there well knowing said report and the matters and things therein stated to be false and untrue, and thereby to commit willful and corrupt perjury in the manner and form as aforesaid."

We think the allegation in this indictment that Walker knew that what Duncan would swear to was known by Duncan to

be false is stated more distinctly than in the indictment considered in *Stewart* v. *State, supra.* The language here is that Walker feloniously, willfully, corruptly and unlawfully did aid, abet and procure Duncan, in making, verifying and falsely swearing to said report. That is, Walker feloniously procured Duncan to swear falsely and thereby to commit willful and corrupt perjury. Certainly, judged by the rule laid down in the Stewart case, this knowledge on the part of Walker that Duncan knew that what he swore to was false, is sufficiently stated.

It is however urged that the facts upon which the averment rests that Walker aided, abetted and procured Duncan not being stated, the indictment in that regard is not sufficient. This objection is, as we think by the case of *Stewart* v. *State, supra,* completely answered, and is so answered by the second paragraph of the syllabus, already quoted.

It will be seen that in that case the averment that the defendant did "persuade, procure and suborn the witness to commit said perjury in manner and form as aforesaid," was held to be sufficient as an indictment. It is true that in that case the question does not seem to have been raised as to whether the specific acts of the defendant, constituting the aiding, abetting and procuring, were necessary to be stated, but as the court held the indictment good and as the charge was practically in the same words as in the indictment now being considered, we should regard it as exceedingly technical, indeed as against the authority of that case, to hold the indictment here bad by reason of the alleged defect now being considered.

Under our statute, Section 7215, which provides that, "No indictment shall be deemed invalid for any defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits," we think this indictment clearly sufficient.

Since by our present statute one who aids, abets or procures another to commit a crime is himself a principal offender and may be convicted of the principal offense upon the establishment to a proper degree of certainty that he did either aid, abet or procure another to commit the crime, we find that under the indictment under consideration the state would be permitted to

introduce evidence to establish the aiding, abetting or procuring, and we do not find that one might not be found guilty of aiding and abetting the offense of perjury without being personally present when such perjury was committed.

In the case of *Chidester* v. *State*, 25 Ohio St., 435, the statute under consideration made the procuring of a crime to be committed a separate crime from the principal offense, and so differed from the present statute in that regard, and under the statute as it then was, it was held, that one under indictment for forgery could not be convicted of that offense without being personally present when the forgery was committed. It by no means follows from this that if he had been indicted for procuring the defendant, or abetting the forging of the instrument, it would have been necessary that he be present. Indeed, the language of the court clearly indicates that such would not be the case. This is said in this connection because the brief of counsel for plaintiff in error urges that under the evidence in this case, it being clearly made to appear that Walker was not personally present when the alleged perjury is claimed to have been committed, he could not be found guilty of aiding or abetting the perjury but only of procuring the perjury to be committed, if he could be convicted of anything, and so, it is urged, that under the facts of the case, the defendant was not properly convicted under the evidence, because it does not appear that Duncan would not have done what he did without any suggestion or procurement on the part of Walker. And attention is called to the definition of the word "procure" and quotation is made from page 697 of the 22d American & English Encyclopedia of Law, 2d Edition, of these words:

"Subornation of perjury is procuring a person to commit perjury which he actually does in consequence of such procurement."

Section 1197 of Bishop's Criminal Law is called to our attention, where it is said in the brief of counsel, this language is used, in speaking of perjury, that such perjury was committed "in consequence of the persuasion." We have carefully examined the section in the 8th Edition of this work, published

in 1892, and fail to find the language quoted. In support of the text several cases are cited, and we are not prepared to say that the proposition is not true and that one can only be convicted of procuring another to commit this crime when such other does commit it in consequence of such procurement. But further, we are not prepared to say that the jury might not, under the evidence in this case, have properly found that whatever was done by Duncan in the matter under consideration, was done in consequence of the procurement by Walker or the inducements held out to him by Walker.

On the 2d of December, 1908, Walker was president of a banking corporation known as the South Cleveland Banking Company. Duncan was the treasurer of the same corporation. Under the laws of the state, the officers of this corporation were required to make a written report, under oath, from time to time, to the superintendent of banks of the state. At the date last aforesaid a report was made out on printed forms furnished by the said superintendent upon which blanks were left to be filled out in writing. On what is known as the front page of that report, one of the things required to be reported was "overdraft." The amount filled out as against this item by Walker was in figures $567.71. This was not a true statement of the condition of the bank as to "overdrafts," unless more than $300,000 which was owing to the bank by the Werner Company of Akron, was properly treated as a loan and not as an overdraft. This was carried on the books of the company as an overdraft. It grew out of transactions between this bank and the Werner Company, involving more than a million dollars, which last named amount was owing by the Werner Company to the banking company at the time this report was made out. The banking company at this time held bonds of the Werner Company to a large amount, which represented a part of this indebtedness or in any event which were held by the bank because of this indebtedness.

The claim is made on the part of Walker that the bank was not the owner of the bonds last spoken of, but held them only as security for the payment of this indebtedness, which has been mentioned in this opinion as more than $300,000, and that this

sum was a loan to the Werner Company; that the bank did not own the bonds, and that therefore the bonds were not included as such in this report, but that this amount was included in what was reported under the heading of "Loans and Discounts." The evidence establishes that at one time the bank held the notes of the Werner Company for this amount; that it gave up these notes, endorsed them as canceled and paid and accepted these bonds, and we think from the evidence it is perfectly clear that either these bonds were the property of the bank and should have been included as such, or they were held as security for an overdraft to this amount. Walker says that he did not report to the directors of the bank the true situation of this indebtedness because he feared to do it. All that is said by Walker about it in his testimony shows that both he and Duncan were purposely deceiving the directors of the bank with reference to this debt, and that it was intended to deceive the superintendent of banks, and from Walker's testimony we think the jury were warranted, in finding that this indebtedness to the bank should have been reported as an overdraft. It was in fact such, and it was so carried on the books of the Werner Company. It was by Walker and Duncan intended that the directors should understand it to be other than what they knew it to be, and for this purpose a report was made out as it was, making this very serious false statement. After Duncan had made out the report as herein indicated, he signed his name to an affidavit, printed at the foot of the report, which reads:

"I, W. G. Duncan, Treas. of the South Cleveland Banking Company, do solemnly swear that the above statement is true, and that the schedules on the back hereof fully and correctly represent the matters therein to be covered to the best of my knowledge and belief."

To this there follows the following:

"The State of Ohio, County of Cuyahoga. Sworn to and subscribed before me this 2nd day of Dec., 1908.

"G. W. GILL,
"Notary Public."

The notarial seal of the notary is affixed.

On the back of this report blanks were filled out by Walker, undertaking to give the situation of the bank as to loans and discounts. This was equally false in that it reported the amount of bonds of the Werner Company held by the bank as $10,000, omitting entirely the $300,000 worth of bonds which have been spoken of, and which were, as already stated, either the property of the bank or held as security for the overdraft already mentioned. Walker says that this placed upon the back was put upon it by him after the portion written by Duncan was put on, and after the affidavit was signed by Duncan. He says also that he saw this was so signed by Duncan; that it was laid by Duncan on his desk, and that he expected him to swear to it.

It is urged that this, with all other evidence put together, fails to show that Walker procured Duncan to swear to this report. He directed Duncan to make the report, knowing that he was to swear to it. When he gave that direction it is perfectly clear that both he and Duncan understood that it was to be a false report in the particulars already pointed out. Duncan was an officer subordinate to Walker, and knew that if he followed the direction of Walker, as expresssed or necessarily implied, he must make out and swear to a false report. If it was false, as we find it to be, Duncan knew that it was false; Walker knew that it was false; and Walker knew that Duncan knew exactly what the situation was, and even if the jury were to have found that Duncan did not make and subscribe this report because of the procurement of Walker, they surely would have been justified in finding that Walker aided and abetted in having it done—in having all done by Duncan that was done by him.

But it is said that the evidence is not sufficient to show that this report was sworn to by Duncan. Duncan says it was; Gill the notary says that it was. The presumption is that it was, because the notary so certifies. It is true that on cross-examination neither Duncan nor Gill show that they remember exactly what was said, but they show, as we think, enough to warrant the jury in finding that it was sworn to. No particular form of words is necessary to the taking of an oath. Witnesses in open court who are sworn to testify in trials seldom say any-

thing, but the clerk of the court administers to them an oath, to which afterwards on their part they are held to have assented, and if having gone through with this ceremony they wilfully testify to what is false, they have committed perjury, although no word was used by them in the taking of an oath.

After the argument of the case counsel for the defendant below made a large number of requests, which the court was asked to give in charge to the jury. The language introducing these requests reads:

"Thereupon the defendant requested the court to charge the following propositions separately and not as a series."

Then follow thirty-seven propositions so requested to be charged. Among them is No. 34. It will be seen that by the language used in introducing these requests they were to be charged separately and not as a series. This did not require of the court to pick out parts of any one of these requests and give them to the jury, unless the court found that that entire request should be given. It simply called upon the court to say whether any one or more of these thirty-seven requests should be given as a whole. This thirty-fourth request included among other things, the following: "You must assume that Duncan, when he testified, did hope that by testifying as he did he would escape prosecution and conviction." Immediately following that and as a part of the same request, is this language: "If you find that when Duncan appeared before Gill on December 2, 1908, he said to Gill, I want to swear to this statement, and that all that Gill said was, "Is this true, Will?" and that no other ceremony was performed, I charge you that that did not constitute the administration of a legal oath, and that you must return a verdict of not guilty."

Now whatever may be said as to the last sentence read, the court was clearly justified in declining to give the thirty-fourth request, because of the language contained in the request as hereinbefore quoted, to-wit, "You must assume that Duncan when he testified did hope that by testifying as he did he would escape prosecution and conviction." There was no error in refusing to give this thirty-fourth request as a whole.

Attention is called to this language because it was especially urged upon the court in argument. What the court said to the jury in reference to the administration of an oath sufficiently instructed the jury as to what it was necessary for the state to prove in that regard. And as to each of the other requests, so far as they state the law applicable to the case, they were properly charged in the instruction given. There was no error in the charge of the court, nor was there any error in refusing to give the several requests.

It is further urged that there was error on the part of the court in its ruling on the admission of evidence, in this:

"When Walker was upon the stand he was asked in cross-examination by counsel for the state, if the bank did not have about eight thousand depositors. This question was objected to, the objection overruled, and an exception taken on the part of Walker. Walker then answered: 'There were between six and seven thousand as I remember.'"

We find no error in this ruling. It had developed in the evidence before this that the bank was insolvent; that it had on deposit two million dollars; that considerable more than half of this amount was loaned to the Werner Company; that the Werner Company was in the hands of a receiver, because of its insolvency, and that it, as a customer of the bank, had been permitted to overdraw to the amount of more than $350,000: that of the overdrafts carried by the bank at the time this report was made out, other than the overdraft of the Werner Company, was about $576.73. The state had a right in the cross-examination of Walker to search his conduct in this matter and to have it appear to the jury that the treatment of the Werner Company, of which Walker was a salaried officer, was so stupendously different from its treatment of every other depositor, and to emphasize this, that there were thousands of depositors who, altogether, had been permitted to overdraw only to this trifling amount, while this one customer was permitted to overdraw the enormous amount which it had overdrawn.

Complaint is further made that the court erred in overruling the motion for a new trial because of the language used on the part of each of the counsel for the state in his argument to the

jury.   Among the things counsel for the state in argument said (speaking of Walker) is: .

"He is an American and entitled to your consideration; entitled to justice; entitled to no more because he sits on that side of the table; no more than if he were among the seven or eight thousand depositors who seem to sympathize in this prosecution with this side of the table; whose all has been swept away, we contend, by his misconduct."

It is said that this language was calculated to inflame the prejudices of the jury without being based upon any legitimate evidence.   We have already said that the evidence given by Walker, upon cross-examination, that there were between six and seven thousand depositors was legitimate.   The counsel in the heat of the argument used the words seven or eight thousand instead of six or seven thousand, but it can not be supposed that this difference in the number of depositors could have had any effect upon the jury.   Whatever was to be drawn from the number, and whether it was six thousand or eight thousand, was immaterial.   But it is said, that there is no evidence that the "all" of these depositors had been swept away by the misconduct of Walker, and through the mismanagement of this bank.   As has already been said, it was shown by the evidence that these depositors had put more than two millions of dollars into this bank, and that more than one-half of it had been loaned, in violation of law, to one concern, which was shown to be insolvent, and was no such exaggeration of facts as would justify the court in holding that the language used constituted misconduct on the part of counsel to say that the "all" of these depositors had been swept away.   Suppose, instead, he had said, Walker is entitled to no consideration greater than the thousands of depositors whose means to the amount of more than a million of dollars have been swept away, or whose means to the extent of more than a million of dollars have been loaned to an insolvent corporation, of which Walker was an officer; and this language would have been justified by the evidence.

Counsel for the state also said: "Every dollar of the money that he put into that company came out of the pockets of the

depositors of the South Cleveland Banking Company; not a dollar of his own money went into it.'' We think, notwithstanding that which Walker says as to the amount that he contributed to the capital stock of the Werner Company, that when the counsel was speaking of the money which was owing by the Werner Company to the banking company, he may well be excused for using the language which he did.

Some of the language used by the assistant prosecutor is rather picturesque, but did not constitute misconduct. In speaking of some one other than Walker, probably of Mr. Werner, who was a witness, he said:

''As soon as you drag down Captain Wagner's bank, the Akron Savings Company, you had to seek, like a vampire for new blood and new victims, and you lit upon the bank of Newberg; that is the bank that your vampire's tentacles clinched upon; that is the one that this blood sucking mouth ran into.''

As already said, this language is somewhat picturesque, but it did not constitute misconduct, under the evidence. A concern which had borrowed money from one bank to a large amount and that bank had gone to the wall, and then continuously for a period of years drawn from this South Cleveland Bank to the amount of more than a million dollars, without any adequate authority, might very well justify the characterization of it as a vampire which was sucking the blood from the bank.

Complaint is made that the prosecuting attorney used this language: ''Aye! There are thousands of people walking the floor now because of what Walker did. If Walker had done right and made that report right, that bank would still live and those thousands of depositors would have been saved.''

To properly understand this language, it must be considered with its context. The entire sentence used by the prosecutor was as follows: ''He forgot about the other side when he told how Walker walked the floor at night in wee small hours, and worried about that bank,'' and then follow the words complained of. There appears to have been no suggestion made when this language was used that counsel for the other side had not spoken

of Walker's walking the floor at night because of the suffering he was undergoing on account of the affairs of the bank, and yet no evidence was introduced nor would it have been admissible to introduce it, to show any such walking or suffering on the part of Walker. But it having been said by counsel for Walker, as we have a right to assume it was said, because no complaint was made of the statement of the prosecuting attorney that it was said, the latter might well be excused for using the language used by him to counter-act the feeling of sympathy for Walker which the language used by his counsel was calculated to affect.

Without selecting further language used by counsel in the argument it must suffice to say, that after reading the arguments of both of the attorneys who represented the state, we find no serious misconduct; certainly no misconduct that would justify a reversal of the case, and painful as the duty is to contribute in any degree to the imprisonment of a fellow-citizen and especially of one who has had the respect of the community in which he lives, we feel constrained to perform that painful duty as the judge of the court below and the jury below felt called upon under their oaths to perform it, and the judgment of conviction is affirmed.